**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VELMA OLU-COLE**, *Parent and next friend of M.K.* <br><br> Plaintiff, <br><br> v. <br><br> **E.L. HAYNES PUBLIC CHARTER SCHOOL**, <br><br> Defendant. | Case No. 1:18-cv-00238 (TNM) |

## MEMORANDUM OPINION

Plaintiff Velma Olu-Cole, on behalf of her minor son M.K., seeks a preliminary injunction against defendant E.L. Haynes Public Charter School ("Haynes" or the "School") "from continuing to violate the Individuals with Disability Improvement Act's ('IDEA') stay put provision." Mem. of P. & A. in Supp. of Pl.'s Mot. for a Preliminary Injunction ("Mot. for Prelim. Injunction") 3, ECF No. 4-1. Ms. Olu-Cole's son, M.K., is a 17 year old student classified under the IDEA as having an emotional disturbance disability. Compl. ¶ 5. Pursuant to this classification, M.K. is entitled to receive educational services personalized to his needs, as well as to certain procedural protections in the event that the School unilaterally excludes him from campus. *See id.* ¶¶ 11-12; 20 U.S.C. §§ 1415(j), (k)(1)(G). In November 2017, M.K. physically attacked a fellow student. Compl. ¶ 13. Haynes subsequently suspended M.K. for 45 days. *Id.* ¶ 31. Now that the 45 day period has elapsed, Ms. Olu-Cole seeks a preliminary injunction against Haynes' continued exclusion of M.K. from campus, which she alleges violates his individualized education program by depriving him of the ability to interact with his peers. Mot. for Prelim. Injunction 16. Though a preliminary injunction is "presumptive[]" in IDEA stay put cases upon meeting a two part inquiry, *Eley v. D.C.*, 47 F. Supp. 3d 1, 8 (D.D.C. 2014),

the presumption can be overcome if a different result is warranted through application of the traditional four part test. *Laster v. D.C.*, 439 F. Supp. 2d. 93, 99 (D.D.C. 2006). Applying the traditional test for preliminary injunctions, I find that although the IDEA's stay put provision and implementing regulations may otherwise require M.K.'s attendance at Haynes, M.K. will not suffer irreparable harm through denial of the relief requested, that granting the relief may injure other interested parties, and that the public interest weighs strongly in favor of the School. Accordingly, the Plaintiff's motion will be denied.

## I. Background

### A. The IDEA and its Stay Put Provision

The IDEA requires states and local educational agencies ("LEAs")—*i.e.*, schools—which accept federal funding to provide a "free appropriate public education" for disabled children. *Honig v. Doe*, 484 U.S. 307, 308 (1988) (discussing the Education of the Handicapped Act, now enacted as the IDEA). This includes the development and implementation of an individualized education program ("IEP") for each disabled child, with goals designed to "meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general educational curriculum." 20 U.S.C. § 1414(d)(1)(A). This also includes certain procedural protections, such as a parent's or a school's right to an administrative hearing if the parent or school disagrees with a placement decision, and the so-called "stay put" provision, which provides that during an administrative or judicial proceeding, the child shall remain in his "current educational placement." *See* 20 U.S.C. §§ 1415(j), (k)(3); *see also* 34 C.F.R. §§ 300.518, 300.532 (implementing regulations). The scheme as a whole reflects congressional recognition that disabled children had been commonly "excluded from the public

school system altogether [or] 'warehoused' in special classes or were neglectfully shepherded through the system until they were old enough to drop out." *Hong*, 484 U.S. at 308.

### B. Factual Background

M.K. is a 17 year old male student at Haynes who is eligible for special education and related services under the IDEA under the emotional disturbance classification. Compl. ¶ 5. His current IEP provides that he receive seven hours a week of specialized instruction within the general education setting, 30 hours per week of counseling outside the general education setting, and two hours a year of consultative occupational therapy. *Id.* ¶ 11. Thus, M.K.'s IEP contemplates that he spend approximately 98% of his school instruction in a general education setting. *Id.* ¶ 12.

For the last three months, however, M.K. has been in an "interim alternative educational setting," off of School grounds, due to a violent incident on November 6, 2017. *See* Compl. ¶ 13. According to M.K.'s mother, the incident began when M.K. allegedly "snatched a juice box" from another student, prompting the other student to grab it back. *Id.* M.K. then pushed the student, who fell down. *Id.* M.K. "repeatedly" punched the student in the head, resulting in the student suffering a concussion. *Id.* Although a Manifestation Determination Review panel determined that M.K.'s behavior was a manifestation of his disability, *id.* ¶ 14, Haynes suspended M.K. from school for 45 days for his conduct. *Id.* ¶ 31. Since then, M.K. has received homebound education through tutors. *Id.* ¶ 34.

On January 11, 2018, Haynes convened a change in placement meeting with the Office of the State Superintendent for Education ("OSSE") to seek approval to transfer M.K. to a different school, which was denied. *Id.* ¶¶ 35, 37. On January 24, 2018, after nearly serving his 45 day suspension, M.K. attempted to return to Haynes, which refused to admit him. *Id.* ¶ 40. The

following day, on January 25, Haynes filed a due process complaint with OSSE's Office of Dispute Resolution seeking to change M.K.'s placement to another school. *Id.* ¶ 43. A determination in the administrative hearing is expected on or around March 9, 2018. Mot. for Prelim. Injunction 15. Since the 45 day period elapsed on January 31, 2018, M.K. has remained at home. *See* Mot. for Prelim. Injunction 15 n.5.

On February 1, 2018, Ms. Olu-Cole filed her complaint and accompanying motions for a temporary restraining order and a preliminary injunction, seeking that I order Haynes to accept M.K. back on campus during the pendency of the due process hearing. Compl. 12. After hearing oral argument on the motions on February 2, 2018, I denied the motion for a temporary restraining order. Minute Order, Feb. 2, 2018. Following an expedited briefing schedule and a further motions hearing held on February 13, 2018, the motion for a preliminary injunction is now ripe for resolution.

## II. Legal Standard

A movant invoking the stay put provision is "presumptively entitled" to an injunction upon a showing that that: (1) proceedings under the IDEA are pending; and (2) a change in the "then-current educational placement" of the disabled child is sought. *Eley*, 47 F. Supp. 3d at 8. The school, however, may "overcome the presumption if it can demonstrate that application of the traditional four part preliminary injunction test warrants a different result." *Laster*, 439 F. Supp. 2d. at 99 (citing *Honig*, 484 U.S. at 327; *Henry v. Sch. Admin. Unit No. 29*, 70 F. Supp. 2d 52, 58 n.5 (D.N.H. 1999)). The traditional four-part test examines whether the Plaintiff has a substantial likelihood of success on the merits, the likelihood that irreparable harm will occur in the absence of the relief sought, the balance of equities (*i.e.*, that an injunction would not substantially injure other interested parties), and the public interest. *Spencer v. D.C.*, 416 F.

4

Supp. 2d 5, 8 (D.D.C. 2006). The factors are balanced against each other and in making its determination, the court looks to "all four factors, taken together." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

## III. Regulatory Scheme

As this matter involves a twist on a typical stay put case insofar as it intertwines IDEA's provisions regarding a request for a change in placement with those governing disciplinary proceedings, I begin with an analysis of the applicable regulatory scheme. The IDEA's stay put provision, as codified in 20 U.S.C. § 1415(j) and implemented in 34 C.F.R. § 300.518, provides:

> Except as provided in §300.533, during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.

While the Plaintiff believes that this fairly straight-forward regulation ends the query and necessitates M.K.'s return to Haynes because there indisputably is an ongoing administrative proceeding, the School presents the matter as more nuanced. It claims that it is acting pursuant to the specific exemption outlined in stay put, Section 300.533, "Placement during appeals," which states:

> When an appeal under § 300.532 has been made by either the parent or the LEA, the child must remain in the interim alternative educational setting pending the decision of the hearing officer or until the expiration of the time period specified in § 300.530(c) or (g), whichever occurs first, unless the parent and the SEA or LEA agree otherwise.

As the School has sought a hearing under Section 300.532, which permits a LEA "that believes that maintaining the current placement of the child is substantially likely to result in injury to the child or others, may appeal the decision [of the placement] by requesting a hearing," it reads

5

Section 300.533 to require M.K. to "remain in the interim alternative educational setting pending the decision of the hearing officer"—in this case, homebound education. Mem. of P. & A. in Opp. to Pl.'s Mot. for Prelim. Injunction ("Def.'s Opp.") 6-7, ECF No. 9.

However, Section 300.533 sets forth limits to which the child may be in an interim alternative educational setting. The outer limit is bounded by either the "decision of the hearing officer or [] the expiration of the time period specified in § 300.530(c) [governing behavior determined not to be a manifestation of the child's disability] or (g), whichever occurs first." As relevant here, subsection (g), "Special circumstances," permits LEAs to "remove a student to an *interim* alternative educational setting for *not more than 45 days*" if the child "[h]as inflicted serious bodily injury upon another person while at school." 34 C.F.R. § 300.530(g) (emphases added). Thus, the plain language of Section 300.518 leads to Section 300.533, which leads to Section 300.532, which leads to Section 300.530(g).[1] The import of these sections is that the School was permitted to place M.K. in an interim alternative educational setting due to his violent behavior for up to 45 days. That 45 day period expired on January 31, 2018, and the School cannot unilaterally continue to exclude M.K. *Cf. Honig*, 484 U.S. at 327 ("Nor do we think that [stay put] operates to limit the equitable powers of district courts such that they cannot, in appropriate cases, temporarily enjoin a dangerous disabled child from attending school. As the [Education of the Handicapped Act's] legislative history makes clear, one of the evils Congress sought to remedy was the unilateral exclusion of disabled children by *schools*, not courts").

The School argues that Sections 300.532(b)(2)(ii) and (b)(3) permit successive 45 day periods in interim alternative education, which are further renewable, but the School misreads

---

[1] Though the School briefly argues that the Plaintiff has not exhausted administrative remedies, it simultaneously recognizes that for IDEA stay put cases, parents are not required to exhaust the administrative process before seeking judicial review. Def.'s Opp. 14.

these provisions. Under Section 300.532(b)(2)(ii) and (b)(3), a hearing officer, upon a determination that "maintaining the current placement of the child is substantially likely to result in injury to the child or to others," may order that the child be placed in "an appropriate interim alternative educational setting for not more than 45 school days." 34 C.F.R. §532(b)(2)(ii). This process—the LEA requesting a hearing and the hearing officer determining that an interim alternative educational setting is appropriate—may be repeated in continued 45 day increments. *Id.* § 532(b)(3). In the School's view, since it has sought a hearing to change M.K.'s placement to another school on the basis that his continuing at Haynes would be substantially likely to result in injury to himself or others, it is permitted to extend the original 45 day removal. Def.'s Opp. 7. This reading, however, is foreclosed by the language of the provisions upon which the Defendant relies. Section 300.532 relates to a hearing officer's authority to remove a child to an interim alternative educational setting, and it is clear that a *hearing officer* may prospectively order the change of placement for a 45 day period, which may be renewed upon further appeal and determination. *See* 34 C.F.R. §§ 300.532(b)(2)(ii), (b)(3). In contrast, M.K. was removed from the school upon Haynes' self-determination, not a hearing officer's. *See id.* § 300.530(g) ("*School* personnel may remove a student . . . for not more than 45 school days") (emphasis added). Thus, upon expiration of the School's authority to remove pursuant to Section 300.530(g), the stay put provision governs until such time as the hearing officer issues a determination in the administrative hearing. Should the hearing officer order that the child be in an interim alternative educational setting, that determination would apply prospectively, and not

function to ratify additional time already spent in an alternative education setting in excess of the 45 days permitted by Section 300.530(g).[2]

## IV. Preliminary Injunction

### A. Stay Put's "Presumptive[]" Preliminary Injunction

Plaintiffs moving for preliminary injunctive relief under IDEA's stay put provision must only meet a two-part showing, upon which the Plaintiff is entitled to what has been characterized as an "automatic injunction." *See Laster*, 439 F. Supp. 2d at 98.[3] This is a presumption, however, which can be overcome if the school "can demonstrate that application of the traditional four part preliminary injunction test warrants a different result." *Id.* at 99; *see also Honig*, 484 U.S. at 327 ("Nor do we think that [stay put] operates to limit the equitable powers of district courts such that they cannot, in appropriate cases, temporarily enjoin a dangerous disabled child from attending school."). Although the Plaintiff initially appeared to dispute that

---

[2] The Defendant also points out that the statute and implementing regulations do not have identical language, and that the statute does not set Section 300.530(g) (45 days) as an outer bound of the length of time a child shall be placed in an alternative educational setting. Def.'s Opp. 8. To Defendant, this means that the School is entitled to keep M.K. in an alternative educational setting until the hearing officer's decision. *Id.* at 9. This misinterpretation also derives from a misreading. While 20 U.S.C. § 1415(k)(4) does not cross-reference to the special circumstances provision as it does in the regulation, it requires that the LEA arrange for an expedited hearing that "shall occur within 20 school days . . . and shall result in a determination within 10 school days after the hearing." Thus, the statute contemplates a decision within 30 school days, well within the 45 days provided by the special circumstances provision.

[3] *But see Henry*, 70 F. Supp. 2d at 58 n.5 ("I disagree with those courts that have suggested that the stay-put provision provides the parents of a disabled child with a right to an automatic injunction. . . . the stay-put provision does not, strictly speaking, authorize the issuance of automatic injunctions. Instead, it entitles parents to injunctive relief upon proof of a violation unless the School District can determine that the application of the preliminary injunction favors the proposed change in placement."). Though district courts may disagree how to characterize the relief sought, it is nevertheless settled that a court may, in an exercise of its equitable powers, fashion appropriate relief. *See id.*; *see also Honig*, 484 U.S. at 327.

the four part test could be applied at all in this matter, *see* Pl.'s Reply to Def.'s Opp. ("Pl.'s Reply") 3, ECF No. 10, the parties agreed at oral argument that the Court can look to the traditional four part test to determine if it warrants a different outcome. I agree that the four part test may apply, and conclude that it does warrant a different outcome.

### B. Application of the Traditional Four Part Test

The first aspect of the test, the Plaintiff's substantial likelihood of success on the merits, weighs in favor of Ms. Olu-Cole for the reasons explained *supra* in Part III.

On the second prong, I find that M.K. would not suffer irreparable harm if the injunction is not granted. Although his IEP provides that most of his instructional time be in a general educational setting, it is not contested that he was properly removed from Haynes in November for 45 school days, and the earliest date that he could have returned was February 1, 2018. *See* Mot. for Prelim. Injunction 15 n.5. During this time, it appears that Haynes has made a good faith effort to continue providing services to enable M.K. to meet the goals set forth in his IEP, and to attempt to work with Ms. Olu-Cole to address her concerns about the services provided to M.K. in the interim alternative educational setting. Def.'s Opp. 14-15. Although Ms. Olu-Cole asserts that M.K. is floundering outside of the general educational setting, it appears that this is at least in part due to M.K.'s own unwillingness to cooperate with his tutors. *See id.* at 15 n.6. As a decision by the hearing officer is expected in the next two weeks, the incremental time that M.K. will have spent out of school does not amount to irreparable harm.

The third prong, which looks to whether an injunction would injure other interested parties, also weighs in the Defendant's favor. Granting an injunction in this instance would risk the safety of other students as well as to M.K. himself. The School alleges that this is not the first act of violence perpetrated by M.K., and that the other incidents involved both students and

9

staff members. *Id.* at 12-13.  Although it appears that M.K. has made progress through mentoring and counseling sessions provided by the D.C. Superior Court's Balanced and Restorative Justice program, Mot. for Prelim. Injunction ¶ 32, the risk of harm to himself, other students, and Haynes' staff is such that returning him to school at this time—with two weeks expected until the hearing officer's determination, one potential result of which is placement in an alternative educational setting—would raise an unacceptably significant potential of injury to other interested parties.

Last, consideration of the public interest strongly favors the School.  There is a significant public interest in maintaining school safety.  *See, e.g.*, *Smith v. Little Rock School Dist.*, 582 F. Supp. 159, 162 (E.D. Ark. 1984).  The Plaintiff candidly characterizes M.K.'s behavior as a "violent physical altercation" during which M.K. "punched the student in the head repeatedly" and resulted in the other student suffering a concussion.  Compl. ¶ 13.  While the Plaintiff's description alone convinces me of the significant public interest supporting the Defendant's position, the Defendant's description of the incident further reinforces this determination.  The School alleges that the other student had to be transported to the hospital in an ambulance, and suffered a seizure, significant bruising, and memory loss.  Pl.'s Opp. 1.  That this incident resulted in "serious bodily injury" warranting suspension is uncontested.  *See* 34 C.F.R. §§ 300.530(g), (i)(3); *see also* 18 U.S.C. § 1365 (defining "serious bodily injury" as that involving "a substantial risk of death; extreme physical pain; protected and obvious disfigurement; or protracted loss of impairment of the function of a bodily member, organ, or mental faculty").  Criminal charges have been filed against M.K. for this attack.  Compl. ¶¶ 15-16.  Nor was this an isolated incident; the record suggests that this attack was the latest in multiple violent incidents with other students and Haynes staff.  Def.'s Opp. 12-13.  Like the

School, this Court must give due consideration to the best interests of M.K.'s classmates, not just his best interests. In light of this troubling attack, the evidence of other violent altercations, and the paucity of evidence suggesting that M.K. no longer poses a danger to other students, the public interest is a significant consideration and strongly weighs against the use of this Court's equitable powers to require the School to integrate M.K. into the student body pending the administrative hearing process.

In weighing all four parts of the test, I find that only the first of the four prongs favors M.K. and that the fourth prong is entitled to substantial weight in this case. Thus, I agree with the School that it is neither necessary nor appropriate for this Court to issue a preliminary injunction requiring Haynes to re-admit M.K. at this time.

## V. Conclusion

Whatever detriment M.K. faces by remaining outside of a general educational setting for an additional ten school days is more than outweighed by the very real potential for physical danger that his presence at Haynes would pose to his fellow students and Haynes staff. For the foregoing reasons, the Plaintiff's motion for a preliminary injunction will be denied. A separate order will issue.

Dated: February 23, 2018

TREVOR N. MCFADDEN
United States District Judge